# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ALEXUS HYDE, on behalf of herself and all others similarly situated, | : : : : Case No. 1:22-cv-591 : : : Judge Jeffery P. Hopkins : : : : |
| *Plaintiff*, | |
| vs. | |
| FRICKER'S USA, LLC, *et al.*, | |
| *Defendants*. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Alexus Hyde's ("Plaintiff") Motion for Equitable Tolling. Doc. 20. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Equitable Tolling.

**I.     PROCEDURAL BACKGROUND**

On October 14, 2022, Plaintiff brought this action against her employers Defendants Fricker's USA, LLC, and Fricker's North College Hill 107, LLC (together, "Fricker's"), alleging that the companies violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01, *et seq.*, and Article II § 34(a) of the Ohio Constitution. In the Complaint, Plaintiff contends that Fricker's maintains practices and policies that include not paying tipped, non-exempt employees the applicable minimum wage for all hours worked in violation of the federal and Ohio statutes. Doc. 1. Plaintiff names herself, as well as other similarly situated employees affected by Fricker's allegedly violative employment practices and policies who at present have not been notified of the current FLSA suit and have yet to be named as potential plaintiffs. *Id.*

At the time this case was filed, *Clark v. A&L Home Care and Training Center, LLC*, Sixth Circuit Case No. 22-3101, was pending before the Sixth Circuit—the outcome of which this Court determined would directly impact the case *sub judice*. *See* Doc. 14. In *Clark*, the Sixth Circuit grappled with the question of what standard district courts should apply when considering whether to grant or deny approval of a court-facilitated notice of a FLSA suit to potential opt-in plaintiffs. On May 19, 2023, the Sixth Circuit rendered the decision in *Clark*. In the order, the Sixth Circuit issued a new mandate requiring that all district courts apply an entirely different standard in cases where a plaintiff involved in FLSA suit seeks court approval of the notice to be sent to potential opt-in plaintiffs. *See Clark v. A&L Home Care*, 68 F.4th 1003 (6th Cir. 2023).

During the time *Clark* was pending before the Sixth Circuit Court of Appeals, Plaintiff in the present case had, on January 27, 2023, filed a Motion for Conditional Certification of the FLSA collective, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Motion for Court-Supervised Notice to Potential Opt-In Plaintiffs"). Doc. 13. Meanwhile, on February 10, 2023, Ficker's filed a Motion to Stay this Court's ruling on Plaintiff's Motion for Court-Supervised Notice to Potential Opt-In Plaintiffs until the Sixth Circuit issued the decision in *Clark*. Doc. 14. Thereafter, on February 28, 2023, the Parties filed a Joint Stipulation to stay the case pending the Sixth Circuit's decision in *Clark*. Doc 15. The Joint Stipulation also included a provision for tolling the statute of limitations for the Court-Supervised Notice to Potential Opt-In Plaintiffs for a period beginning on February 10, 2023, extending through the date the Sixth Circuit reached a final determination in *Clark*. *Id*. Because Plaintiff's previously filed Motion for Court-Supervised Notice to Potential Opt-In Plaintiffs had not yet been fully briefed and did not incorporate the procedural changes

2

induced by *Clark*, Plaintiff withdrew it. Doc. 19; Notation Order (July 5, 2023). Now before the Court is Plaintiff's revised Motion for Equitable Tolling (the "Motion"), requesting that this Court toll the statute of limitations for potential opt-in plaintiffs, filed on July 19, 2023—two months after the Sixth Circuit rendered its decision in *Clark*. Doc. 20.

II. **LAW AND ANALYSIS**

    A. **The Effect of *Clark* on FLSA Collective Actions in the Sixth Circuit.**

The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of . . . themselves and other employees similarly situated." *Id.* at § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Thus—assuming they are "similarly situated"—other employees become parties to an FLSA suit only if they affirmatively choose to do so.

In a normal civil suit, a plaintiff gives a district court notice of their alleged claims through the commencement of a lawsuit. *See Osborn v. Bank of United States*, 22 U.S. 738, 819 (1824) (stating the "judicial power . . . is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law"). But in *Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989), the Supreme Court discerned from § 216(b) an implied judicial power, "in appropriate cases," to "facilitat[e] notice" of FLSA suits "to potential plaintiffs." *Id.* at 169. In that case, Supreme Court did not indicate what it meant by "potential" plaintiffs for purposes of facilitating notice of an FLSA suit; the Court merely "confirm[ed] the existence of the trial court's discretion, not the details of its exercise." *Id.* at 170.

3

In the decades since *Hoffman*, most courts have adopted the two-step framework for facilitating notice of an FLSA suit to potential plaintiffs. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). At the first step, an FLSA plaintiff asks the district court to facilitate notice of the suit to other employees who are "similarly situated" to the original plaintiff. *See Knecht v. C & W Facility Servs., Inc.*, 534 F. Supp. 3d 870, 873 (S.D. Ohio 2021). This step has traditionally been referred to as "conditional certification" and typically takes place prior to the parties conducting discovery. Then, after notice has been sent to other employees and "merits discovery is complete[,] . . . the court takes a closer look at whether those 'other employees' are, in fact, similarly situated to the original plaintiffs." in *Clark v. A&L Home Care*, 68 F.4th 1003, 1008 (6th Cir. 2023). This is step two, where the court grants or denies final approval of the collective.

Historically, district courts, in determining whether to grant "conditional certification" at the first step, have only required that a plaintiff "'make a modest factual showing' that [they are] similarly situated to the other employees [they are] seeking to notify." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006)). This was a "fairly lenient" standard that "typically result[ed] in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (citation omitted).

However, in *Clark* the Sixth Circuit modified this framework keeping in place the two-step process but heightening the showing that plaintiffs must make before a district court can grant approval to facilitate notice to potential opt-in plaintiffs. *Clark*, 68 F.4th at 1011. Instead of the previous, "modest factual showing" standard, plaintiffs now "must show a 'strong likelihood' that those employees [whom they seek to notify] are similarly situated to the

plaintiffs themselves." *Id.* "Strong likelihood," in this context, borrows from the preliminary injunction standard: it "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* This new framework has the predictable consequence of lengthening the already lengthy pre-notice stage of an FLSA collective action because discovery will generally be required to meet the new threshold inquiry for court facilitated notice. *See id* at 1012–13.

Importantly in the context of this case, the *Clark* framework also poses statute of limitations issues. While a claim on behalf of a named plaintiff accrues when the complaint is filed, a similarly-situated employee's claim does not accrue **until they file written notice of consent and become a party plaintiff**. *See* 29 U.S.C. § 256. This practice differs from the automatic tolling for class members of Rule 23 class actions in that statute of limitations are not automatically tolled for FLSA claims at filing for similarly situated plaintiffs. *Compare* 29 U.S.C. §˚255(a) (requiring claim within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation) *with Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (tolling claims for Rule 23 class members). Without the equitable tolling of the statute of limitations, the *Clark* standard creates a serious risk of harm to opt-in plaintiffs due to the potentially elongated pre-notice period.

Over concern for this issue, Plaintiff now moves this Court to equitably toll the statute of limitations for all potential opt-in plaintiffs. The issue *sub judice* is not whether the Court has authority to equitably toll the statute of limitations for potential plaintiffs, but whether it is appropriate, under the circumstances presented here, to do so at this juncture in exercising sound discretion.

Fricker's makes two central arguments against Plaintiff's request for equitable tolling. First, Fricker's argues that Plaintiff does not have standing to request equitable tolling for any potential opt-in plaintiffs. Second, Fricker's contends that equitable tolling is unwarranted, under the facts of this case, even if Plaintiff has standing. The Court addresses each argument in turn.

B.  **Plaintiff Has Standing to Toll the Statute of Limitations.**

According to Fricker's, because notice has not been issued to potential opt-in plaintiffs, Plaintiff's request for equitable tolling is premature and she lacks standing to seek such relief on their behalf. Doc. 21, PageID 133–36. The Court disagrees.

The Sixth Circuit made clear in *Clark*, both in the majority opinion and Judge Bush's concurring opinion, that it has fundamentally changed the architecture of FSLA suits in this Circuit. *Clark*, 68 F.4th at 1012–13. With the adoption of the new "strong likelihood" standard, defenses, such as a limitation defense, are no longer "off limits for purposes of the notice determination[.]" *Id.* at 1012. These defenses must be litigated—and therefore presented and responded to—as part of the initial merit's determination by Plaintiff. *Id.* at 1012–13. The reasoning behind this conclusion is best said by Judge Bush:

> The heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit. As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run.

*Id.* at 1012 (Bush, J., concurring). In short, "implementation of the newly announced [*Clark*] standard without consideration of tolling is likely to deplete remedies Congress has duly

provided." *Id.* at 1013.[1] The Sixth Circuit has, in essence, shifted the majority of the fact-finding mission of a FLSA plaintiff to the *pre-notice* stage of the litigation.

Though Fricker's argues that a plaintiff does not have standing to represent potential plaintiffs until notice is issued, notice to non-parties is not even explicitly provided for in the FLSA. And the FLSA's collective-action provision is hardly clear on the procedure courts are to follow. *See* 29 U.S.C. § 216(b). Thus, in deciding a case about the provision of notice in FLSA collective actions, courts are forced to "unavoidably explore beyond Congress's words." *Clark*, 68 F.4th at 1013. Notice is and must be implied by the statute because the right to "proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal rules of Civil Procedure." *Hoffmann*, 493 U.S. at 170. "That is, the Supreme Court recognized that notice was needed to ensure that a collective action could actually occur." *Clark*, 68 F.4th at 1013.

Fricker's argument opposing a process for joining multiple potential plaintiffs, which on its face seems orderly and sensible and aligned with the rules and statute, falls of its own logic: if Plaintiff has an implied right to proceed on behalf of potential plaintiffs *similarly situated to her*, how does Plaintiff fail to have standing to seek equitable tolling of the statute of limitations on their behalf? Indeed, pre-*Clark* this Court routinely granted FLSA plaintiffs' requests to equitably toll the statute of limitations for potential plaintiffs before notice was issued. *E.g., Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828–29 (S.D. Ohio

---

[1] In fact, late notice was already an issue pre-*Clark*. For example, while following the previous framework for FSLA claims, notice was to be sent 361 days after the filing of the complaint in *Clark*. *Clark*, 68 F.4th at 1012. The new standard will take even longer.

2007) (equitably tolling FLSA statute of limitations where parties were unable to reach an agreement on how to best provide notice to potential plaintiffs); *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 848–49 (S.D. Ohio 2013) (equitably tolling FLSA statute of limitations from date plaintiffs sought to notify putative class members of pending action)*; Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11cv759, 2013 WL 5177184, at *2–3 (S.D. Ohio Sep. 12, 2013) (granting named plaintiffs').[2] The Court finds this procedure has even more backing post-*Clark*. *E.g., Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 850–51 (S.D. Ohio 2023) (finding equitable tolling necessary before notice is given in a FLSA suit in part due to the "additional layer of potential delay-inducing disputes" post-*Clark); Duncan v. Magna Seating of Am., Inc.*, No. CV 22-12700, 2024 WL 1049467, at *2 (E.D. Mich. Mar. 11, 2024) ("Earlier decisions concluding that it is premature to consider equitable tolling before a plaintiff opts in to an FLSA action . . . are inapplicable in light of the new standards and analyses set forth by *Clark*."). The Court sees nothing in the *Clark* opinion that suggests it must go against the longstanding and sensible policy that pre-dated the Sixth Circuit's recent decision. If anything, *Clark*, and Judge Bush's concurring opinion in particular, reinforce the Court's belief that this procedure is sound and should remain unchanged.

---

[2] Several courts from other Circuits have allowed equitable tolling of FLSA claims where the case's litigation posture has delayed the court's consideration of the motion for conditional certification and notice. *See, e.g., Stickle v. SCIWestern Market Support Center, L.P.*, No. CV 08-083-PHX-MHM, 2008 WL 4446539, at *21–22 (D. Ariz. Sep. 30, 2008) (equitably tolling the FLSA statute of limitations where court delayed ruling on the plaintiffs' collective action pending determination of defendant's motion to dismiss); *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 WL 1539325, at *1–2 (W.D. Ark. May 25, 2007) (tolling the statute of limitations pending a decision by the MDL panel whether to transfer the case); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 06-0715 SC, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control, including litigation and the competition between attorneys that occurred during the settlement of related action); *Helton v. Factor 5, Inc.*, 2011 WL 5925078, *2 (N.D. Cal. Nov. 28, 2011) (equitably tolling FLSA statute of limitations pending decision on plaintiffs' motion for conditional certification).

In support of its argument, Fricker's relies on three cases from the Northern District of Ohio, none of which are binding upon this Court. Doc. 21, PageID 134.[3] The case Fricker's relies upon most extensively, *Jones*, 2023 WL 4456815, acknowledges that "[c]ourts are divided on whether it is appropriate for a court to equitably toll the statute of limitations for potential opt-in plaintiffs in an FLSA case before those employees actually opt in." *Id.* at *7. The *Jones* court ultimately sides with those cases that have held that it is premature to consider whether the statute of limitations should be tolled with respect to potential opt-in plaintiffs. *Id.* However, the decision in that case hinged on four other cases, all decided pre-*Clark*. *Id.*[4] Support for *Jones* has diminished in the wake of *Clark*. In this Court's view, pre-*Clark* decisions (and cases that rely on them) which have concluded that it is premature for a district court to consider equitable tolling before a plaintiff opts in to an FLSA action no longer offer persuasive authority.

The Court finds that *Jones*, its progeny,[5] and the pre-*Clark* decisions cited in *Jones*, are inapposite. Plaintiff's request is not premature, and she therefore has standing to proceed. The Court will consider whether the statute of limitations should be tolled with respect to potential opt-in plaintiffs.

---

[3] In support of their standing argument, Defendants cite *Jones v. Ferro Corp.,* No. 1:22-cv-00253-JDA, 2023 WL 4456815, at *7 (N.D. Ohio July 11, 2023); *McElroy v. Fresh Mark, Inc.*, No. 5:22-cv-287, 2023 WL 4904065, at *12 (N.D. Ohio Aug. 1, 2023); and *McCall v. Soft-Lite, LLC*, No. 5:22-cv-816, 2023 WL 4904023, at *11 (N.D. Ohio Aug. 1, 2023).

[4] The *Jones* court exclusively relies on the following cases in reaching its conclusion: *Woods v. First Transit, Inc.*, No. 1:21-cv-739, 2022 WL 4465752, at *2 (N.D. Ohio Sept. 26, 2022); *Lemmon v. Harry & David Operations, Inc.*, No. 2:15-cv-779, 2016 WL 234854, at *8 (S.D. Ohio Jan. 20, 2016); *Taylor v. Pilot Corp.*, No. 2:14-cv-2294, 2018 WL 10550646, at *2 (W.D. Tenn. Mar. 8, 2018); *Mende v. Wildcat Investments*, LLC, No. 2:17-cv-286, 2018 WL 11432996, at *3 (S.D. Ohio Oct. 24, 2018).

[5] *McElroy* and *McCall* both rely exclusively on *Jones* to reach the same conclusion. *See McElroy*, 2023 WL 4904065, at *12; *McCall*, 2023 WL 4904023, at *10–11.

### C. The Interest of Justice Weigh in Favor of Equitable Tolling.

The doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Struck*, 931 F. Supp. 2d at 845. "The decision to invoke equitable tolling in a particular case, therefore, lies solely within the discretion of the trial court." *Id.* at 846. Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000)). The burden rests squarely with a FLSA plaintiff to demonstrate why he or she is entitled to toll equitably the statute of limitations in a given case. *Id.*

The Sixth Circuit has articulated five factors for district courts to consider in determining whether equitable tolling should be applied in a case. These are: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). This list "is not necessarily comprehensive, and not all factors are relevant in all cases." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). (quoting *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003)). Indeed, "equitable tolling has been found where three of the five factors were not satisfied." *Roslies-Perez v. Superior Forestry Service, Inc.*, 652 F.Supp.2d 887, 899 (M.D. Tenn. 2009) (tolling FLSA statute of limitations for putative class members) (citing *Dixon v. Gonzales*, 481 F.3d 324, 331 (6th Cir. 2007)). As set forth below, the Court concludes that the interests of justice favor equitable tolling in this case when measured against all of the factors listed in the Sixth Circuit's *Andrews* decision.

      **i.      Actual Notice.**

With respect to the first factor, this Court finds that potential opt-in plaintiffs lack actual notice of this case. *See Bolletino v. Cellular Sales of Knoxville, Inc.*, 3:12-cv-138, 2012 WL 3263941, at *4 (E.D. Tenn. Aug. 9, 2012) (granting equitable tolling after finding that "potential opt-in plaintiffs almost certainly lack notice . . . of the filing requirement and lack knowledge of the FLSA or their potential claim."). Due in part to the unique posture of this case, about 19 months have passed since the parties stipulated to stay this case pending the Sixth Circuit's ruling in *Clark v. A&L Home Care*, 68 F.4th 1003 (6th Cir. 2023). *See* Doc. 15. This delay has consumed much of the FLSA's statute-of-limitations period "and has the potential to extinguish the claims of a substantial portion of the putative class." *Struck*, 931 F. Supp. 2d at 847. Thus, while the FLSA's opt-in mechanism "necessarily involves some lapse of time between the date a collective action is commenced and the date that each opt-in plaintiff files [their] consent form," *Baden-Winterwood*, 484 F.Supp. 2d at 826, the extreme delay in receipt of actual notice in this case—through no fault of the potential plaintiffs—could prove highly prejudicial. The Court agrees with the district court in *Struck* which reasoned that "early notice to Opt-in Plaintiffs in a[n] [FLSA] collective action . . . was not possible . . . allowing Opt-in Plaintiffs' claims to diminish or expire due to circumstances beyond their direct control would be particularly unjust." *Struck*, 931 F. Supp. 2d at 847 (quoting *Stransky v. HealthONE of Denver, Inc.*, 868 F.Supp.2d 1178, 1181–82 (D. Colo. 2012)). Accordingly, the Court finds that the first factor under *Andrews* weighs heavily in favor of tolling the statute of limitations.

## ii.   Constructive Notice.

With respect to second of the five factors, constructive notice, "this Court acknowledges that the Sixth Circuit in an unpublished opinion has recognized that the mere existence of the FLSA statute provides plaintiffs with constructive notice of their rights under the FLSA and the filing deadlines." *Baden-Winterwood*, 484 F.Supp.2d at 828 (citing *Archer v. Sullivan County Tenn.*, 129 F.3d 1263, 1997 WL 720406 at *4 (6th Cir. 1997)). Nevertheless, "[i]f the mere existence of a law suffices to impart constructive notice, an inquiry into the notice factors would be meaningless" because "[a] court would always find that every plaintiff had constructive notice of the filing requirement." *Id.* "Such a finding also questions why notice is required to be sent to all potential opt-in plaintiffs to inform them of their rights and statutory deadlines." *Id.*

Given the procedural history this case has undergone and given all the other factors that weigh more favorably towards Plaintiff, "equity demands that this Court give little weight to the fact that the mere existence of the FLSA placed [p]laintiffs on constructive notice of the filing requirement." *Id.* (granting FLSA plaintiffs' request for equitable tolling).

## iii.   Diligence.

The Supreme Court has stated that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149–50, (1984). Here, however, Plaintiff has diligently pursued her rights under the FLSA. She moved for conditional class certification and court-supervised notice to potential opt-in plaintiffs on January 27, 2023—just over three months after filing the Complaint. *See* Doc. 13. A month later the parties filed their stipulation to stay the case (Doc. 15), and the present motion (seeking to equitable tolling of the statute of limitations of notice

to potential opt-in plaintiff) was filed on July 19, 2023—only two months after the stay was lifted. Doc. 20.

As a practical matter, potential opt-in plaintiffs could not have diligently filed consent forms with the Court if they were unaware of their rights to join the case. "In the context of an opt-in collective action, diligence is measured by whether potential plaintiffs opted-in when given the opportunity, not by whether those plaintiffs chose to initially bring a lawsuit." *Baden-Winterwood*, 484 F.Supp.2d at 828 (citing *Owens v. Bethlehem Mines Corp.*, 630 F.Supp. 309, 312-13 (S.D.W.Va.1986)) (cleaned up). Considering that that potential opt-in plaintiffs are almost certain to have lacked knowledge of the pendency of this action, the Court likewise finds that their failure to opt into the suit alone does not indicate a lack of diligence. Rather, the almost 19-month long delay (caused by the parties' stipulated stay of prosecution of the case pending the Sixth Circuit's ruling in *Clark*) in the issuance of notice constitutes an "extraordinary circumstance that stood in [the] way" of potential plaintiffs' exercise of those rights. *Abadeer v. Tyson Foods, Inc. v. Tyson Foods*, Inc., 3:09-0125, 2010 WL 5158873, at *2 (M.D. Tenn. Dec. 14, 2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). As such, there has been no showing of lack of diligence and this factor too weighs in Plaintiff's favor.

    iv. **Absence of Prejudice to Defendants.**

With respect to fourth prong, the Sixth Circuit has emphasized that "[a]bsence of prejudice [to the defendant] is a factor to be considered only after a factor that might justify tolling is identified." *Baden-Winterwood*, 484 F.Supp. 2d at 826 (quoting *Allen*, 366 F.3d at 401–02) (alterations in original). Having determined that the previous three factors weigh in favor of equitable tolling, the Court examines whether such tolling would in some manner be prejudicial to Fricker's. Here, the Court finds that Fricker's "had full knowledge that the

named Plaintiff brought the suit as a collective action on the date of the filing" and "was fully aware of its scope of potential liability." *Struck,* 931 F. Supp. 2d at 848. Moreover, Fricker's stipulated to stay this case while awaiting the *Clark* decision from the Court of Appeals, further enlarging the litigation timeline. Under the circumstances, Fricker's clearly has not been prejudiced by the tolling of the FLSA's statute of limitations in order to allow notice to be sent to all potential opt-in plaintiffs to inform them of their rights and statutory deadlines.

v. **Ignorance of the Filing Deadline by Potential Plaintiffs Is Reasonable to Warrant Equitable Tolling.**

Although "[i]gnorance of the law alone is not sufficient to warrant equitable tolling," *Baden-Winterwood*, 484 F.Supp. 2d at 829 (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)), the Sixth Circuit has recognized that "ignorance of a filing requirement may be reasonable under certain circumstances to warrant equitable tolling." *Id.* (citing *Allen*, 366 F.3d at 401). Here, there is a high level of risk that potential opt-in plaintiffs were never informed of the FLSA lawsuit or Fricker's potential wage violations and will not be so notified until the court-ordered notice is issued in this case. By that time, as earlier discussed, a substantial portion of those claims may already be untimely. This Court finds that it is entirely reasonable that putative class members who received no actual notice of the pendency of this action would remain ignorant of the filing deadline. Therefore, this factor too weighs in favor of equitable tolling.

D. **Scope of Equitable Tolling and Limited Discovery.**

In light of the above, this Court finds that the interests of justice weigh heavily in favor of tolling the FLSA's statute of limitations for putative opt-in plaintiffs. The Court also agrees with Plaintiff that in accordance with the "broad discretion [of trial courts] under the rules of civil procedure to manage the discovery process and control their dockets," *McElroy*, 2023

WL 4904065, at *8 (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014)), ninety (90) days for conducting limited discovery is warranted. *See* Doc. 20, PageID 124. Accordingly, the scope of discovery and tolling shall be as follows.

- The parties shall have **90 days** to conduct limited discovery; all discovery pursued shall be "'narrowly tailored' to the sole question of whether there is a 'strong likelihood' that potential opt-in plaintiffs show a 'substantial similarity'" to the named plaintiff." *Cordell*, 691 F. Supp. 3d at 847 (cleaned up).

- Plaintiff shall have **until the end of that 90-day period** to file her anticipated Motion for Conditional Certification and Court-Facilitated Notice to Potential Opt-in Plaintiffs.

- If court-facilitated notice is granted, the statute of limitations on the claims of potential opt-in plaintiffs shall run until **60 days after** notice is mailed to putative class members.[6]

With these limitations, Plaintiff's request for equitable tolling of the FLSA's statute of limitations for potential opt-in plaintiffs is **GRANTED**.

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** Plaintiff's Motion for Equitable Tolling (Doc. 20).

---

[6] *See Cordell*, 691 F. Supp. 3d at 850–51 (tolling the statute of limitations for potential opt-in plaintiffs before conditional certification of plaintiff's collective action and notice to potential plaintiffs in light of *Clark*); *Stransky*, 868 F.Supp.2d at 1182 (tolling the FLSA's statute of limitations for potential opt-in plaintiffs from the date of plaintiffs' motion for judicial notice until 90 days after such notice is received); *Baden-Winterwood*, 484 F.Supp. 2d at 829 (tolling the FLSA statute of limitations from the date Plaintiff initiated discussions regarding notice to putative class members until the date of the court's ruling on the notice order); *Abadeer*, 2010 WL 5158873, at *3 (tolling the FLSA statute of limitations during the pendency of motions concerning notice to putative class, and extending 120 days from the date of approval of the requested notice).

**SO ORDERED**

<u>September 16, 2024   </u>

_____
Jeffery P. Hopkins
United States District Judge